**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

**PARKER COLE, P.C.**
Michael R. Parker (SBN: 271242)
michael@parkercolelaw.com
Kevin Cole (SBN: 321555)
kevin@parkercolelaw.com
6700 Fallbrook Ave., Suite 207
West Hills, California 91307
Telephone: (818) 292-8800
Facsimile:  (818) 292-8337

*Attorneys for Plaintiff,*
Michael Elatt

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ELATT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEWPOINT FRANCHISOR, LLC, D/B/A HOMES & LAND,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

//
//
//
//

1
CLASS ACTION COMPLAINT

# INTRODUCTION

1. Plaintiff MICHAEL ELATT, ("Mr. Elatt," or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant NEWPOINT FRANCHISOR, LLC D/B/A HOMES & LAND ("NewPoint" or "Defendant") in negligently, knowingly and/or willfully transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), thereby invading Plaintiff's privacy.

2. Upon information and belief, Defendant sent random automated text messages to Plaintiff and others similarly situated without their prior express written consent in order to solicit their business. This is exactly what the TCPA was designed to prevent. *See*, *e.g.*, *Mims v. Arrow Fin Servs., LLC*, 565 U.S. 368, 370-71 (2012) ("Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

# NATURE OF THE ACTION

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA"), to address consumer complaints about certain

telemarketing practices. The TCPA prohibits, among other things, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints

received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message).

10. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

11. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

12. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

13. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

14. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(b).

16. Because Defendant directs and conducts business within the State of California and this judicial district, personal jurisdiction is established.

17. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiff resides within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, which occurred while Plaintiff was located in the County of Los Angeles, State of California, which is within this judicial district.

//
//

## PARTIES

18. Plaintiff is an individual residing in the County of Los Angeles, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19. Defendant is a corporation whose state of incorporation is Delaware and principal place of business is in Bee Cave, Texas.

20. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Defendant operates a national real estate advertising and magazine platform. Homes & Land is an all-inclusive real estate web site, e-magazine, and magazine offering thousands of luxury home listings and houses for sale in over 300 markets throughout the United States and Canada. Homes & Land Magazine is the most popular and widely read real estate listings publication in the United States and Canada.[2]

21. At all times relevant herein, Defendant conducted business in the State of California, in the County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS

22. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone ending in "-6699" (the "6699 Number"). Plaintiff's cellular telephone is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

23. Starting on or about June 23, 2020, Defendant sent multiple marketing text messages to Plaintiff's cellular telephone, from the short code 474747, without Plaintiff's prior express written consent.

24. One of the text messages sent from short code 474747 to Plaintiff read:

> (Homes & Land Magazine) Join the July Issue. Ad Packages Start @$249. Specials on Half & Full Pages too! Reply, Call or Email for Details. 949.283.0719 SouthOC@uia.net

---

[2] https://www.homesandland.com

CLASS ACTION COMPLAINT

25. Plaintiff is not a customer of NewPoint, and prior to receiving the unsolicited text messages, Plaintiff had never even heard of NewPoint or its advertising services.

26. Upon information and belief, the telephone number and email address indicated in a text message Defendant sent to Plaintiff from short code 474747, are either owned, operated, and/or maintained by Defendant or on behalf of Defendant.

27. The text messages sent by Defendant to Plaintiff's cellular telephone contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff the unwanted text messages.

28. Prior to receiving the text messages from Defendant, Plaintiff never contacted NewPoint, and Plaintiff has certainly never inquired about NewPoint's advertising services.

29. Because Plaintiff is alerted when a text message is received to Plaintiff's cellular device, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy, and distracted and aggravated Plaintiff upon receipt.

30. Upon information and belief, Defendant sent the aforementioned text messages to Plaintiff's cellular telephone using short message script ("SMS") messaging technology, specifically SMS "474747", which is a short code leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

31. Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text message *en masse* to thousands of customers' cellular telephones nationwide.

32. Upon information and belief, the automated text messaging system used by Defendant to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

33. Upon information and belief, Defendant utilized an "automated telephone dialing system" because the text message sent to Plaintiff's cellular device were sent from "474747", which is a short code telephone number utilized to send text messages to consumers *en masse* and without human intervention; and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers automatically.

34. The text messages at issue sent by Defendant to Plaintiff's cellular telephone beginning on or around June 23, 2020, constituted an "advertisement" and/or "telemarketing" as prohibited by the TCPA, as Defendant sent the text message to Plaintiff in order to advertise its "Ad Packages" as well as its real estate advertising magazine, and also because Defendant sent the text message for the purpose of advertising the sale of its ad space to Plaintiff in the future.

35. Defendant's telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

36. Plaintiff never provided "prior express written consent' or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit SMS or MMS text messages to Plaintiff's cellular telephone by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

37. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

38. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated and distressed that Defendant annoyed Plaintiff with an unwanted marketing text message, without Plaintiff's consent.

39. The text messages from Defendant, or its agent(s), violated 47 U.S.C. § 227(b)(1)(A)(iii).

## STANDING

40. Plaintiff has standing under Article III of the Constitution for Plaintiff's claims because (i) Plaintiff properly alleges injuries in fact, (ii) which are traceable to Defendant's unlawful acts, and (iii) are likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

### *Injury in Fact*

41. Plaintiff's injury must be sufficiently "concrete" and "particularized" to satisfy the requirements of Article III. *Id.* at 1547.

42. For an injury to be concrete, it must be "*de facto*," that is, it must actually exist. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiff has suffered a concrete injury as Defendant has sent multiple unsolicited text message solicitations to Plaintiff's cellular telephone using an ATDS. Those text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

43. An injury is "particularized," if it affects the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiff's injury is particularized as Defendant invaded Plaintiff's privacy by sending multiple unsolicited text message solicitations to her cellular telephone using an ATDS. Plaintiff became distracted, annoyed, and aggravated each time Plaintiff received Defendant's unsolicited text messages. All of these injuries are particularized and specific to Plaintiff, and are the same injuries suffered by each member of the putative Class.

### *Traceable to Defendant*

44. Plaintiff must have suffered an injury in fact that is traceable to Defendant. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

45. Defendant's text messages are directly and explicitly linked to them. The text messages Defendant sent to Plaintiff indicate they were from Defendant. Each text message specifically mentions "Homes & Land Magazine" which, upon information and belief, is a reference to one of Defendant's Home & Lands

Magazine. Defendant's text messages are the sole source of Plaintiff's and the Class Members' injuries.

### *Redressable by Judicial Order*

46. Plaintiff must have suffered an injury in fact that is redressable by judicial order. *Id.*

47. Plaintiff's Prayer for Relief includes a request for damages for the text messages Defendant sent, as authorized by statute. *See* 47 U.S.C. § 227(b)(3). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the Class Members.

## CLASS ALLEGATIONS

48. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

49. Plaintiff represents, and is a member of, the Class, which is defined as follows:

> All persons within the United States who were sent a text message by Defendant or its agent, affiliate, or subsidiary, using a short code to said person's cellular telephone, without express written consent, within the four years prior to the filing of the Complaint.

50. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

51. Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

52. The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's

records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

53. The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages *en masse* to thousands of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

54. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

   a) Whether within the four years prior to the filing of this Complaint, Defendant or affiliates, subsidiaries, or agents of Defendant transmitted any text messages without the prior express written consent of Plaintiff and Class members using an "automatic telephone dialing system";

   b) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

   c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether Defendant's conduct was knowing and/or willful;

e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

55. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

56. Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing text message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

57. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

58. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

59. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

61. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the

law. Plaintiff anticipates no difficulty in the management of this case as a class action.

62. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

63. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

64. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

65. The Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

66. This suit seeks only damages and injunctive relief for recovery of

statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. §§ 227, *ET SEQ.***

67. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

68. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

69. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

70. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. §§ 227, *ET SEQ.***

71. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

72. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

73. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

74.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief and judgment against Defendant:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any Subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

- An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA;

- Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) requiring Defendant to cease all unsolicited text messaging activity to Plaintiff and the Class and prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system ("ATDS") without obtaining the recipient's prior express consent to receive such telephonic communications via the use of such equipment in the future;

- An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;

1. • Post-judgment interest as allowed by applicable law; and
2. • Any other further relief that the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America and Federal Rule of Civil Procedure 38(b), Plaintiff is entitled to, and demands, a trial by jury on all claims so triable.

Dated: July 30, 2020                          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: __/s/ *Abbas Kazerounian*_____
Abbas Kazerounian, Esq.
Mona Amini, Esq.
Pamela Prescott, Esq.

**PARKER COLE, P.C.**
Michael R. Parker, Esq.
Kevin Cole, Esq.
6700 Fallbrook Ave, Suite 207
West Hills, CA 91307
Telephone: (818) 292-8800
Facsimile:  (818) 292-8337

*Attorneys for Plaintiff Michael Elatt and the Putative Class*